## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| BAYOU STEEL BD HOLDINGS, LLC, *et al.*[1] | Case No. 19-12153 (KBO) |
| Debtors. | (Jointly Administered) |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee of BAYOU STEEL BD HOLDINGS, L.L.C., *et al.*, | Adv. Proc. No. 21-50240 (KBO) |
| Plaintiff, | |
| vs. | |
| STEEL AND PIPE SUPPLY COMPANY, INC., | |
| Defendant. | |

### DEFENDANT STEEL AND PIPE SUPPLY COMPANY, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE FIRST AMENDED COMPLAINT

Defendant Steel and Pipe Supply Company, Inc. ("SPS"), by its undersigned counsel, hereby opposes the motion of plaintiff George L. Miller ("Trustee" or "Plaintiff"), as Chapter 7 Trustee of the estates of Bayou Steel BD Holdings, L.L.C. and its two subsidiaries ("Bayou Steel" or the "Debtors") for leave to file his proposed Second Amended Complaint (Adv. D.I. 38) (the "Motion for Leave"). As detailed below, the proposed Second Amended Complaint (the "2nd Am. Complaint") suffers from material defects that render all or part of it subject either to dismissal under Fed. R. Civ. P. 12(b)(6), and/or to an order directing a more definite statement pursuant to Fed. R. Civ. P. 12(e). The Trustee protests that the trivial changes made in the 2nd Am. Complaint should now be deemed satisfactory, since, after all, it is a proposed *second* amended complaint –

---

[1] The three Debtors in these cases are Bayou Steel BD Holdings, L.L.C., BD Bayou Steel Investment, LLC, and BD LaPlace, LLC, all of them Delaware limited liability companies.

leaving unmentioned that the Trustee's *first* amended complaint is so patently defective that he made no effort to defend it.[2]    However, much though the Trustee protest of the great lengths to which he has gone to make miniscule changes in the four remaining counts, the Court should not assume that the third time must be a charm, or otherwise drop its guard with respect to the critical matter of reviewing and assessing the sufficiency of complaints at the pleadings stage. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–11 (3d Cir. 2009).  For the reasons set forth below, SPS respectfully requests the Court to deny the Motion for Leave.

## STATEMENT OF JURISDICTION

1.     The Bankruptcy Court's jurisdiction over this proceeding is entirely predicated on its "related to" jurisdiction under 28 U.S.C. § 1334.  The causes of action being asserted, all purportedly based on state law, are all non-core" matters under 28 U.S.C. § 157(b).

2.     Pursuant to Local Bankruptcy Rule 7013-1(f), defendant SPS states that it does not consent to the entry of final orders or judgments by the Court, if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## INTRODUCTION

3.     Bayou Steel had "rebate program agreements" with its top customers, including SPS, in force when it entered Chapter 11, whereby the customer's completion of purchases in a given quarter generated credits that could be applied to purchases in the following quarter.[3]  At the case's

---

[2] In the Trustee's Brief in Opposition (Adv. D.I. 39) to SPS's Motion to Dismiss and for More Definite Statement (Adv. D.I. 35 & 36), directed to the First Amended Complaint (Adv. D.I.30), the Trustee chiefly points to his proposed 2nd Am. Complaint as being, in effect, "new and improved" in comparison to the indefensible First Amended Complaint.  SPS has separately filed a Reply in support of its Motion to Dismiss and for More Definite Statement.

[3] *See generally, Motion for Interim and Final Orders Authorizing the Debtors to Maintain and Administer Existing Customer Programs and Honor Certain Prepetition Obligations Related*

outset, the Debtors' secured lenders approved an aggregate amount of earned customer "rebate credits" that the Debtors could allocate among those top customers that had earned them. The lenders thus enabled what otherwise might have seemed an incursion on their liens, in recognition of the benefit of maintaining the programs to generate sales.

4.      After the Court granted the Debtors' motion for approval of the arrangement[4], Bayou Steel allocated to SPS a portion of the aggregate credits to which the lenders agreed.[5]  It was only about 70% of the customer credits that SPS had earned as of the Petition Date.  But SPS made use of them, completing purchases pursuant to which SPS paid Bayou Steel over $2.1 million in cash after application of the credits[6] – thus achieving for the estate the purpose of the credit program.

5.      When Bayou Steel closed its doors at the end of December 2019, its account for SPS – as set forth in an Account Statement that the Trustee sent to SPS in May 2020 – reflected that SPS owed it a total of $17,287.81 in connection with four invoices.[7]  SPS believed (and still maintains)

---

*Thereto* (D.I. 12) (the "Customer Programs Motion"), filed on the Petition Date. Unlike the original Complaint, this iteration now refers to it.  *See* 2nd Am. Complaint, ¶ 12.

[4]  *See Interim Order Authorizing the Debtors to Maintain and Administer Existing Customer Programs and Honor Certain Prepetition Obligations Related Thereto*, Oct. 3, 2019 (D.I. 50) (the "Interim Order").  A final Order (D.I. 184) (the "Final Order") was entered on Nov. 4, 2019.

[5]  *See* 2nd Am. Complaint, ¶ 11.

[6]  *See* 2nd Am. Complaint, ¶ 30.

[7]  *See* 2nd Am. Complaint, ¶ 10;  2nd Am. Complaint, Exhibit A (not filed); original Complaint, Exhibit A (Adv. D.I. 1); and  Exhibit "A" hereto.: A true and correct copy of Bayou Steel's *actual* Account Statement for SPS, dated Jan. 13, 2020, which the Trustee (through a member of his firm) forwarded to SPS by email on May 6, 2020, together with the forwarding email,  are attached as Exhibit "A."   In contrast to the Exhibit that was attached to the original Complaint and the First Amended Complaint, this Account Statement identifies the nature of each entry, making clear that only four of them refer to invoices.

The Court may take judicial notice of this Account Statement, for purposes of a Rule 12(b)(6) motion or otherwise, since the Trustee furnished it to SPS; the Trustee cannot legitimately object, given that the Trustee furnished it to SPS in the first place; and this Account Statement is expressly referred to in the 2nd Am. Complaint at ¶ 10, as well as the prior  complaints at ¶ 10.  *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("We now hold

that the remaining $211,718.56 in customer credits that it had earned in the 3rd quarter of 2019 should be used by way of recoupment or setoff against that final amount.

6.    The proposed Second Amended Complaint, like the original Complaint (after excluding the dismissed Counts 5 and 6), purports to be an action for breach of contract or similar state common law causes of action.  Counts 1, 2 and 3 seek to collect the amounts allegedly owed by SPS in connection with four invoices, totaling $17,287.81, according to the Debtors' account. In the Original Complaint, Plaintiff alleged that a demand letter was sent to SPS for just that amount.  *See* Complaint (Adv. D.I. 1), ¶¶ 10-11.  Exhibit "A" hereto includes an email sent on behalf of the Trustee making the demand for the $17,287.81.[8]

7.    Count 4 is the Trustee's attempt to retroactively reverse Bayou Steel's customer credit program for 2019 with SPS, long after SPS completed purchases of steel products post-petition from Bayou Steel in its Chapter 11 case.

8.    The Trustee's claim is preposterous, but he is not letting the facts get in his way.  The complaints, including the 2nd Am. Complaint, have omitted significant facts inconvenient to the Trustee's position.  For example, the Trustee makes no direct mention of a Rebate Credit Agreement between Bayou Steel and SPS, such as the Debtors described having with their top customers in the Customer Programs Motion  – although its existence is necessarily implied in the 2nd Am. Complaint at ¶¶ 12, 30.

---

that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").  "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000).

[8]    The Court may take judicial notice of the email demand, to which ¶ 10 of the Complaint referred, for the same reasons as described in n. 7, *supra*.

9.    Indeed, it should not be gainsaid that the Trustee had ample opportunity to investigate such facts as might have been pertinent prior to deciding whether to file a complaint demanding, in cash, a retroactive non-consensual reversal of rebate credits that had been issued by Bayou Steel to SPS, with respect to the credit notes that Bayou Steel issued and applied to various SPS purchases completed post-petition during the Chapter 11, with the full approval, *inter alia*, of the only creditors (the secured lenders) who had an interest in the handling of those credits.

10.    George Miller was appointed as the Chapter 7 Trustee of the estates of Bayou Steel estate on February 25, 2020, and he commenced this adversary proceeding against SPS on March 8, 2021.  In the intervening 13 months, he investigated the accounts receivable and avoidance actions left to the estate pursuant to the A.P.A. under which the Debtors sold substantially all their assets during their Chapter 11 case. The Trustee either has had access to the Debtors' records, or has had the means to obtain them[9] – including their records of purchase orders from SPS, the P.O. acknowledgements from Bayou Steel, and the invoices from Bayou Steel, payment records, the operative Bayou Steel customer rebate credit agreement with SPS for 2019, and the rebate credit memos issued post-petition.  To the extent that the Trustee needed it for his investigation of potential estate clams, he had the authority to pursue Rule 2004 examinations regarding the Debtors' estate, including any individuals involved in Bayou Steel's "Customer Programs" prepetition and the continued implementation of the Customer Programs post-petition, subject to the Court's Orders regarding the application of "rebate credits" to prepetition orders.  The Trustee also could have – and may have -- communicated informally with some of Bayou Steel's former officers or personnel concerning those matters.

11.    We know the Trustee had Bayou Steel's final Account Statement for SPS, since his

---

[9] Needless to say, SPS does *not* have access to the Debtors' records.

representative emailed it to SPS on May 6, 2020.  *See* Exhibit "A".  In the period between his appointment and the filing of the Complaint, the Trustee (through representatives) had various direct communications with SPS, during which SPS provided information that he requested.  *See* 2nd Am. Complaint, ¶ 13.  Later, between the filings of the Complaint and the first Motion to Dismiss (Adv. D.I. 20), there were further communications, in the course of which SPS supplied the Trustee with copies of SPS's own set of the pertinent documents, including the operative rebate credit agreement, the credit memos issued by Bayou Steel, all the pertinent purchase orders, P.O. acknowledgements, and invoices, and a spreadsheet with all the tallies.[10]

12.    In short, the Trustee has not lacked information, documents, and an opportunity to gather the facts needed to properly state his claims, if meritorious, and to omit them if not.  Yet nary a word has he said about the investigation he undertook leading to the Complaint.  Meanwhile, the Motion essentially acknowledges the skimpiness of the fact allegations.  See Motion, ¶ 4.

13.    The Trustee has shown that his principal interest is getting past the pleadings stage with his feckless claim for $526,000 intact.  *See* Motion, ¶ 2 (citing count 4 as his "vehicle" for the demand).  He has made clear that he intends to compel SPS to incur significantly more legal expense, by way of propounding discovery as to "pertinent documents" – with no mention of the Debtors' own documents and information, or the fact that SPS already furnished him all its pertinent documents on an informal basis – and through taking depositions of unnamed persons for unstated purposes.  Motion, ¶ 4.  For the Trustee, getting past the pleadings stage with Count 4 intact means he can continue to use it, together with the intended needless but costly discovery demands, as a cudgel supporting his wholly unjustified settlement demands.

---

[10] Some of the information that SPS furnished to the Trustee is described in the two affidavits that were attached with SPS's original Motion to Dismiss.

14.    It is because of complaints such as this one that the Supreme Court, in *Twombly* and *Iqbal*, substantially raised the bar for complaints, above the looser standard that had long been in place under *Conley v. Gibson*.[11]    As the Third Circuit has made clear, "*Iqbal* … provide[d] the final nail-in-the-coffin for the "no set of facts" standard that applied to federal complaints before *Twombly*." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

15.    This Court needs to "draw on its judicial experience and common sense,"[12] and perform the scrutiny called for under *Iqbal*, *Twombly*, and their progeny, with respect to the 2nd Am. Complaint, to prevent the Trustee from taking unfair advantage of the costs of litigation in pursuit of settling a baseless claim.

## ARGUMENT

## I.    <u>The Grant of Leave to Amend a Complaint Is Not Automatic</u>

16.    Rule 15(a) provides that, if a responsive pleading has already been filed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).    The decision to permit an amendment rests in the sound discretion of the Court.    *See Heyl & Paterson Int'l Inc. v. F.D. Rich Hous. of V.I., Inc.*, 663 F.2d 419, 425 (3d Cir. 1981).

17.    Granting leave to amend is not automatic; it "may be denied in case of: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice; or (4) futility of amendment." *Wilson v. City of Wilmington*, 2015 WL 4594510, at *3 (D. Del. July 29, 2015).

18.    "A proposed amended claim is futile if it would fail to state a cause of action upon which relief could be granted, in accordance with 'the same standard of legal sufficiency as applies

---

[11] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), which together overturned the standard set in *Conley v. Gibson,* 355 U.S. 41 (1957).

[12] *Fowler,* 578 F.3d at 211, quoting *Iqbal,* 556 U.S. at 679.

under Rule 12(b)(6).'" *O'Keefe v. Friedman & Friedman, Ltd.*, 2018 WL 1535234, at *4 (D.N.J.

Mar. 29, 2018), quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).    Objections to a

proposed pleading under Federal Rule 12(e) (more definite statement) may also be considered in

deciding a motion for leave to amend. *See, e.g.*, *Franklin v. Ashworth*, 2018 WL 2734940, at *3

(E.D. Cal. June 7, 2018); *see also Averhart v. CWA Local 1033*, 2015 WL 9581753, at *5 (D.N.J.

Dec. 30, 2015), *aff'd.*, 688 Fed. Appx.  158 (3d Cir. 2017).

## II.    *Iqbal* **and** *Twombly* **Set a Heightened Standard of Scrutiny of the Allegations of Fact and Law in a Complaint That Is Challenged Under  Rule 12(b)(6)**

### A. The Court Must Separate the Alleged Facts and the Applicable Law, then Assess the Facts in Reference to the Law for Real Plausibility

19.    As a result of the Supreme Court's rulings in *Iqbal* and *Twombly*, "pleading standards

have … shifted from simple notice pleading to a more heightened form of pleading, requiring a

plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Fowler v.

UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

20.    The "no set of facts" standard that had been established in 1957 under *Conley v. Gibson*

was "repudiated" by the Court in *Iqbal* and *Twombly.  Fowler,* 578 F.3d at 210-211.

21.    The Supreme Court in *Iqbal* made it "clear that the *Twombly* 'facial plausibility'

pleading requirement applies to all civil suits in the federal courts." *Id.*    "After *Iqbal, …*

conclusory o 'bare-bones' allegations will no longer survive a motion to dismiss." *Id.*  "To prevent

dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim

is facially plausible." *Hughes v. United Parcel Serv., Inc.*, 639 Fed. Appx. 99, 102 (3d Cir. 2016),

quoting *Iqbal,* 556 U.S. at 678.

22.    The factual allegations must "raise a right to relief above the speculative level." *Phillips

v. Cnty. of Allegheny,* 515 F.3d 224, 231–32 (3d Cir.2008).  [W]here the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—

but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, citing Fed.

Rule Civ. Proc. 8(a)(2).

23.    In determining facial plausibility, a court should not assume the veracity of mere legal

conclusions or threadbare recitals of the elements of a cause of action. *Iqbal,* 556 U.S at 679. …

If a plaintiff's allegations do "not nudge[ ] their claims across the line from conceivable to

plausible, [the] complaint must be dismissed." *Twombly,* 550 U.S. at 570.

24.    In *Fowler*, the Third Circuit established that, "when presented with a motion to dismiss

for failure to state a claim, district courts should conduct a two-part analysis." *Id.* at 210.

> First, the factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions. …
>
> Second, a District Court must then determine whether the facts alleged in the
> complaint are sufficient to show that the plaintiff has a "plausible claim for relief."
> .... In other words, a complaint must do more than allege the plaintiff's entitlement
> to relief.  A complaint has to "show" such an entitlement with its facts.

*Id.*  at 210-211 (citations to *Iqbal* omitted).

25.    For purposes of the second part of the analysis, the court needs to know what law is to

be applied.   Determining whether a "plausible claim for relief" has been stated cannot be done in

a vacuum without reference to the asserted legal basis for the claim.   "In order to determine whether

viable claims exist  under state law,  it  is  necessary  to  first  determine  which state's  law  is

applicable."  *In re Rescue Rangers, LLC*, 576 B.R. 521, 529 (Bankr. E.D. Va. 2017).

B.  The Trustee's Contention that a Trustee's Complaint Need Not Satisfy the
    <u>Requirements for Surviving a Rule 12(b)(6) Challenge is Baseless and Wrong</u>

26.    The Trustee argues that his allegations are "sufficient to put Defendant on notice of the

gravamen of [his] claims." Motion, ¶ 8.  But since 2009, such an assertion as that has not

9

adequately represented the standard that his complaint must meet.  *See supra*.[13]

27.   The Trustee then cites two bankruptcy decisions from outside the Circuit that are evidently intended to convey the notion that he, as a chapter 7 trustee, need not be held to the general standards applicable to complaints and their review under Rule 12(b)(6).  The cases are inapposite, and his notion is meritless.

28.   He cites a 2011 Ohio bankruptcy case, for the proposition that when a party other than the debtor "files the avoidance action," it "is entitled to some flexibility" in its pleading.   Motion, ¶ 8, citing *In re Antioch Co.*, 451 B.R. 810, 815, 2011 WL 1670952 (Bankr. S.D. Ohio 2011).  But the complaint here at issue is <u>not</u> an avoidance action; it asserts no avoidance claims.   Moreover, in *Antioch*, which presented a challenge to a litigation trustee's complaint to avoid preferential transfers, the court ruled that the preference claims were *not* sufficiently pled, and *granted* the Preference Defendants' motion to dismiss, agreeing with them as to several identified deficiencies in the complaint.[14]

29.   The one other case the Trustee cites is *In re Air Cargo, Inc.*, 401 B.R. 178, 192, n. 8 (Bankr. D. Md. 2008). The passage the Trustee cites dealt specifically with the "heightened pleading standard" under Federal Rule 9(b) for claims alleging *fraud*.   It was observed that courts

---

[13] The Trustee also asserts that he is "acting in good faith" [Motion, ¶ 7] – an assertion that is plainly self-serving, but also subject to doubt in view of the Trustee's decision to continue to include various erroneous allegations in the complaint without factual basis, and to omit other key facts.  These include omitting mention of the existence of rebate-credit agreements between Bayou Steel and its top customers; his use, as an exhibit to the complaint, of a spreadsheet that omits significant identifying data appearing in Bayou Steel's Account Statement for SPS, which SPS only possesses because his representatives sent it to SPS in May 2020; and his mischaracterizations of how rebate credits were applied.

[14] *Antioch* is analogous to this Court's case of *In re Valley Media, Inc.*, 288 B.R. 189 (Bankr. D. Del. 2003), and others that followed it, providing guidance on the level of detail needed in preference complaints.   The court required detail in the complaint as to most of the deficiencies identified by the defendants, while allowing "flexibility" as to one.  *Antioch*, 451 B.R. at 814-815.

13519569/1

have often (though *not* always) relaxed *the Rule 9(b)t* standard in actions brought by a bankruptcy trustee.  *In re Air Cargo, Inc.*, 401 B.R. at 192, n.8.[15]  There is no claim of fraud in the 2nd Am. Complaint, to which Rule 9(b) would apply.  Any relaxing of the Rule 9(b) standard does *not* extend to the requirements under Rules 8 and 12(b)(6).  *See In re Charys Holding Co., Inc.*, 2010 WL 2774852, at *3 (Bankr. D. Del. July 14, 2010) (Shannon, B.J.).

30.    Although the Trustee urges this Court to tread lightly in its review of the sufficiency of his complaint and allow the action to proceed to discovery, that approach was rejected by the Supreme Court.

31.    The Supreme Court's construction of Fed. R. Civ. P. 8 "is <u>intended as a policy matter to weed out meritless cases prior to the commencement of discovery</u>, <u>thereby minimizing the expenditure of the judicial system's resources on such cases</u>."  *In re Hydrogen, L.L.C.*, 431 B.R. 337, 346 (Bankr. S.D.N.Y. 2010) (emphasis added).  See *Twombly,* 550 U.S. at 559–60 (noting that it is unrealistic to expect that "a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process," or that "discovery abuse" can be avoided, through careful judicial oversight.).

## III.    The Trustee Contends that the Laws of Louisiana App[y to the 2nd Am. Complaint

32.    SPS has argued, in its motion challenging the First Amended Complaint, that under

---

[15]    That principle has been applied in this District as well.  *See, e.g., In re Nortel Networks, Inc.*, 469 B.R. 478, 498 (Bankr. D. Del. 2012). But even as to claims of fraud, that principle's application is limited.

In a case in this District in which the trustee was pursuing fraud claims, the Court ruled that the trustee was "<u>not entitled to a lax pleading standard</u>.  While the Court recognizes there are certain cases where a trustee is at a disadvantage with respect to pleading allegations with the particularity required by Rule 9, due to lack of access to information, this is not one of those situations." *Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 511–12 (D. Del. 2012) (emphasis added). *See also  In re Palm Beach Fin. Partners, L.P.*, 488 B.R. 758, 767 (Bankr. S.D. Fla. 2013); *In re Moll Grp., LLC*, 2005 WL 6506459, at *9 (Bankr. E.D. Pa. June 15, 2005).

Federal Rule 12(e), a more definite statement was needed as to which state's laws the Plaintiff believes applies and as to the complaint's vaguely-described, so-called "Contract."

33.    Parties "have a due process right to have their claims governed by the state law applicable to their dispute." *In re NorVergence, Inc.*, 424 B.R. 663, 700 (Bankr. D.N.J. 2010), citing *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 821–23 (1985).  Where the information in the complaint was insufficient to enable the court to designate the appropriate state's laws for the claims, the court in *NorVergence* directed the plaintiffs "to supply the lacking information by amending the Complaint." *Id.*

*34.*    Defendants should not have to guess which state's laws are the basis for the plaintiff's claims.  *In re Ladd*, 2013 WL 4266856, at *4 (Bankr. D.S.C. Aug. 9, 2013).  In granting leave to amend, in the court in *Ladd* directed plaintiff to "plead causes of action under the substantive law of the appropriate state to the extent she asserts state law causes of action." 2013 WL 4266856, at *4.  *See also In re McConnell*, 390 B.R. 170, 183 (Bankr. W.D. Pa. 2008) (ruling that a generically-stated claim of "predatory lending" failed to state a claim, the court wrote: "[t]he defendants should not have to guess which of the myriad of statutes that 'predatory lending' refers to").

35.    In the 2nd Am. Complaint, the Trustee posits that the laws of the state of Louisiana apply to the alleged causes of action.  2nd Am. Complaint, ¶ 9, n. 2.  He indicates that the choice is based on two alleged facts: that Bayou Steel was based in Louisiana, and that "its invoices would appear to suggest that Louisiana law applies, without expressly so stating."  *Id.*

36.    The Trustee's explanation for his choice thus appears dubious, for a number of reasons[16]; and SPS does not concede that Louisiana's laws apply here.

---

[16] SPS previously suggested that the laws of states other than Louisiana are applicable.  *See* Motion to Dismiss at 13-14 & n. 11.    Any assertion in the 2nd Am. Complaint about what the invoices say should be made verifiable by attaching the invoices – especially given that Count 1's

37.   Nonetheless, in order to address the sufficiency of the 2nd Am. Complaint, SPS will assume *arguendo* that the laws of the state of Louisiana apply, based on the Trustee's assertion.

## IV.   Under Louisiana Law, the Count 2 Claim of "Account Stated" Fails to State a Claim Upon Which Relief May Be Granted

38.   In Count 2 of the 2nd Am. Complaint, the bare fact allegations are that Bayou Steel sent invoices to SPS; and that Bayou Steel's "most recent statement of account" is attached to the complaint as Exhibit A[17]; that SPS "never objected to the invoices"; that the Trustee "demanded" that SPS pay for the goods purchased and received; and that SPS "failed and refused to do so." 2nd Am. Complaint, ¶¶ 22-24.   Upon those scant allegations, the legal conclusion is asserted that there is "an account stated:" in the amount of $17,287.81.

39.   Those allegations do not support a claim of "account stated" under Louisiana law.

40.   "An account stated under [Louisiana] law is an acknowledgment by the debtor of the amount of an account due." *Horace Mann Ins. Co. v. Cas. Reciprocal Exch.*, 383 So. 2d 1040, 1044 (La. Ct. App. 1980), citing *James v. Fellowes and Company*, 20 La.Ann. 116 (1868); *Peterson Sales Company, Inc. v. C-Moore Glass, Inc.*, 296 So.2d 397 (La.App. 2d Cir. 1974); *Red Barn Chemicals, Inc. v. Lassalle*, 350 So.2d 1315 (La.App. 3d Cir. 1977).

41.   There needs to have been "an acknowledgment" by SPS "that it was liable to" Bayou Steel or the Trustee "for any certain amount of money." *Horace Mann Ins.,* 383 So. 2d at 1044.

---

heading says in part that it is a claim based on "Invoices Never Paid," No explanation is furnished for focusing on the invoices rather than, say, the purchase orders, acknowledgements, or shipment locations.

[17] Since the Trustee failed to attach the Exhibit A referenced in the proposed 2nd Am. Complaint, SPS is assuming, for present purposes, that the Trustee intended to attach the same Exhibit A that he attached to the Complaint and First Amended Complaint.

42.   "[W]here there is no such agreement between the parties, the plaintiff may not recover upon a theory of account stated." *Merrill-Stevens Dry Dock Co. v. Corniche Exp.*, 400 So. 2d 1286, 1286–87 (Fla. Dist. Ct. App. 1981), citing, *inter alia*, *Horace Mann Ins.,* 383 So. 2d 1040.

43.   Accordingly, Count 2 fails to state a claim for "account stated" upon which relief may be granted.

### V.   Under Louisiana Law, the Count 3 Claim of "Goods Sold and Delivered" Fails to State a Claim Upon Which Relief May Be Granted

44.   Louisiana, unlike the other states of the union, does not "resort to the common law in other states;" it is "a Civil Law state." *Lewis v. Intermedics Intraocular, Inc.*, 56 F.3d 703, 707 (5th Cir. 1995). "There is no common law in Louisiana," so any action "of necessity results from the statute." *Francis v. Herrin Transp. Co.*, 423 S.W.2d 610, 613 (Tex. Civ. App.), *writ granted* (June 5, 1968), *rev'd on other grds,* 432 S.W.2d 710 (Tex. 1968). "[I]n the state of Louisiana, the principles of the common law are not recognized." *Oreck Corp. v. Bissell, Inc.*, 1999 WL 163389, at *3 (E.D. La. Mar. 22, 1999).

45.   "[I]n Louisiana, the sources of law are legislation and custom…Case law is not considered positive law." *Luv N' Care, Ltd. v. Precious Moments, Inc.*, 2018 WL 2994822, at *3 (W.D. La. May 29, 2018), *report and recommendation adopted in part, rejected in part,* 2018 WL 2988399 (W.D. La. June 14, 2018), citing La. Civ. Code Art. 1; *Lewis,* 56 F.3d at, 707.

46.   In Louisiana, there is no cause of action for "goods sold and delivered," separate and distinct from a claim of breach of contract with respect to goods sold.

47.   Since Louisiana does not adopt the common law from other states, no such cause of action can be imputed, if and to the extent such a cause of action may have a basis in some other state's common law.

48.   Accordingly, Count 3 fails to state a claim upon which relief may be granted.

14

VI.    **Under Louisiana Law, the Count 4 Claim for "Breach of Contract and Common Counts – Improper Rebate Application" Fails to State a Claim Upon Which Relief May Be Granted**

A.    **At Bottom, this is at Most a Breach of Contract Claim**

49.    Count 4 purports to assert a claim against SPS for $526,152, collectively under "the legal theories of breach of contract, account stated, and goods sold and delivered." 2nd Am. Complaint, ¶ 32.

50.    These legal theories all invoke state law.  Plaintiff asserts that Louisiana law applies.

51.    For the reasons described in Part IV, *supra*, the allegations in Count 4 do not state a claim for "account stated," since there needs to have been an agreement between the parties as to the amount owed; and there is no allegation of any such agreement.

52.    For the reasons described in Part V, *supra*, the allegations in Count 4 do not state a claim for "goods sold and delivered," since there is no such independent cause of action in Louisiana.

53.    Notwithstanding the heading of Count 4, ¶ 32 of the 2nd Am. Complaint, in identifying the legal theories asserted, does not mention "improper rebate application" or suggest that it might be a separate cause of action.  In any event, there is no separate cause of action in Louisiana.

54.    In short, the sufficiency of Count 4 is to be assessed as a breach of contract claim.

B.    **Under *Fowler's* Two-Part Analysis, the First Step Is to Review the Facts Alleged**

55.    In accordance with *Fowler, supra*, the factual elements of the claim should be separated from the legal elements.

56.    The fact allegations of Count 4 are as follows:

   a.    It asserts that there was "no overarching written agreement" but nonetheless a "Contract" – of unstated terms – between Bayou Steel and SPS, set forth in purchase orders, acknowledgements, and invoices.   2nd Am. Complaint, ¶ 9.

b.  It acknowledges that the Court entered an Interim and Final Order granting the Debtors' motion for authority to maintain and administer existing Customer Programs and honor certain prepetition obligations related to those Customer Programs. *Id.*, ¶ 12.

c.  It acknowledges that SPS made substantial purchases from Bayou Steel post-petition, paying over $2 million in cash to the Debtors  *Id.*, ¶ 11.

d.  It further alleges that "in excess of $526,000 in rebates that arose prepetition" were applied to the purchases that SPS completed post-petition. *Id.*, ¶ 11.

e.  It asserts that, as of December 17, 2019, according to Bayou Steel, the amount SPS owed Bayou Steel for goods sold and delivered was in the amount of $17,287.81, as set forth in Bayou Steel's "statement of the account between the parties," attached to the Complaint as Exhibit A, *Id.*, ¶ 10.

f.  While the Trustee avoids alleging it directly, it is impossible to read even these bare facts without recognizing that SPS was among the customers with which Bayou Steel had a "Customer Program" such as Bayou Steel sought and obtained authority to honor, through its "Customer Programs Motion."[18]

g.  It is alleged that the Trustee – but not Bayou Steel – sent a demand letter "seeking to recover" the amount of $526,000. Id., ¶ 13.

h.  Finally, it is alleged – as a legal conclusion, but will be mentioned here nonetheless – that the application of the rebates for SPS was not authorized by the Court or the Bankruptcy Code. *Id.*, ¶ 31.

---

[18] As the Debtors asserted in their Customer Programs Motion (D.I. 12), of which the Court can take judicial notice, the Debtors incurred

> various obligations to customers and distributors, including but not limited to, discounts, incentives, rebates and allowances (collectively, the "**Customer Obligations**") in order to attract and maintain positive relationships. …

> Specifically, the Debtors maintain deductions and allowances for the benefit of certain customers. For example, if a customer purchases a certain amount of product within a designated time period, the Debtors issue a credit to such customer. The Debtors settle these credits via rebates, deductions and allowances against the outstanding invoices on an annual basis.

Customer Programs Motion, ¶¶ 5, 6.

It should be noted that, in addition to the information that SPS has supplied the Trustee regarding the Rebate Credit Agreement in force between Bayou Steel and SPS in 2019, the Trustee has had ample time over the past two years to gather information about it from the Debtors' former officers and employees.

16

### C. These Alleged Facts Fail to State Claim for Breach of Contract under Louisiana Law

57.   In Louisiana, "[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civil Code Art. 1906. "An obligation is a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee.  Performance consists of giving, doing, or not doing something."  La. Civil Code Art. 1906. Thus, a contract is a source of obligations.  La. Civil Code Art. 1757.

58.   Under Louisiana law, the "essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the oblige[e]." *Favrot v. Favrot*,  68 So.3d 1099, 1108-09  (La. App. 4 Cir. 2/9/11), *writ denied,* 2011-0636 (La. 2011).  *See also CAM Logistics, L.L.C. v. Pratt Indus., Inc.*, 2021 WL 4485890, at *21 (W.D. La. Aug. 11, 2021), *report and recommendation adopted,* 2021 WL 4483853 (W.D. La. Sept. 29, 2021), citing *Hayes Fund for the First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mt., LLC*, 193 So.3d 1110, 1115 (La. 2015),  Louisiana Civil Code article 1994 (to constitute a breach of contract claim, a plaintiff must assert: "(1) defendants owed them an obligation; (2) defendants failed to perform that obligation; and (3) defendants' failure resulted in damages to the plaintiffs.").

59.   "In other words, the plaintiff must first establish that there was a contract, that a contract provision was breached, and that the breach caused damages."  *Clements v. Hancock Whitney Bank*, 2020 WL 7405656, at *2 (W.D. La. Nov. 23, 2020), *report and recommendation adopted,* 2020 WL 7393813 (W.D. La. Dec. 16, 2020).

60.   Under Louisiana law, "[t]o survive a Rule 12(b)(6) motion to dismiss, a plaintiff must point towards a specific contractual provision that was breached in order to state a valid claim." *CAM Logistics, L.L.C. v. Pratt Indus., Inc.*, 2021 WL 4485890, at *21 (emphasis added); *see*

*Clements v. Hancock Whitney Bank,* 2020 WL 7405656 at *2-3; *Whitney Bank v. SMI Cos. Global, Inc.*, 949 F.3d 196, 205 (5th Cir. 2020) (applying Louisiana law).  *See also Louque v. Allstate Ins. Co.*, 314 F.3d 776, 782 (5th Cir. 2002) ("To state a claim for breach of an insurance contract under Louisiana law, a plaintiff must allege a breach of a specific policy provision.").

61.    Surely, under *any* state's laws, a breach of contract claim would not be deemed to pass muster under *Iqbal* and *Twombly* where the plaintiff asserts, as the Trustee does here, that "there was no overall agreement between the parties."  Motion, ¶ 4 (emphasis added).

62.    Similarly, under any state's laws, a breach of contract claim could not pass muster under *Iqbal* and *Twombly* where a plaintiff relies on the threadbare allegation that a contract might well exist, although it "must be pieced together" using discovery. *See* Motion, ¶ 4.  *Cf. In re Raytrans Holding, Inc.*, 573 B.R. 121, 132 (Bankr. D. Del. 2017) (granting defendant's motion to dismiss trustee's second amended complaint, where the complaint lacked facts or evidence to establish that the defendants were insiders).

63.    But under Louisiana law, where the contract provision that was allegedly breached must be identified in the complaint, the allegations are woefully insufficient.  The proposed 2nd Am. Complaint does *not* identify a specific contractual provision that was breached.  (Indeed, per the allegations of the complaint itself, Bayou Steel's own records reflected that SPS owed approximately $17,000, not $526,000.)

64.    The sole fact allegation upon which the Count 4 claim of breach of contract rests is that applying the rebate credits was inconsistent with, and in violation of, the Bankruptcy Court Order approving the Debtors' Customer Programs Motion.   In considering this allegation, we may put aside for the moment SPS's strong disagreement with the Trustee's legal conclusion that the Order on the Customer Programs Motion was at all violated.

65.    The important facts here are:   The Bankruptcy Court's Order was directed to the Debtors.  SPS was not a party to the bankruptcy case then, or at any time during the Chapter 11 case   It did not appear as an "interested party" in connection with the Customer Programs Motion, or the resulting Court Order, or otherwise.

66.    There is no allegation that SPS entered contractual obligations to Bayou Steel premised on the Trustee's misconstruction of the Bankruptcy Court's Order on the Customer Programs Motion.  The very notion of it is implausible.

67.    In short, there is no contract provision, between Bayou Steel and SPS, that the 2nd Am. Complaint alleges was breached.  An action may not go forward just so a plaintiff can engage in a "fishing expedition."  *In re Smith*, 400 B.R. 370, 377 (Bankr. E.D.N.Y. 2009), *aff'd,* 426 B.R. 435 (E.D.N.Y. 2010), *aff'd,* 645 F.3d 186 (2d Cir. 2011).  *See also In re McFadden*, 471 B.R. 136, 145–46 (Bankr. D.S.C. 2012) ("The trustee cannot engage in fishing expeditions …").

68.    Accordingly, Count 4 fails to state a claim upon which relief may be granted.

**VII.    The Court Should Impose Clear Limits in Connection with Any Further Amended Complaint Filings in this Proceeding**

69.    This 2nd Am. Complaint represents the Trustee's third attempt to try to present his baseless claim for a retroactive, nonconsensual reversal of Bayou Steel's customer credit program with SPS for 2019, in a form sufficient to get past the pleadings stage to discovery.

70.    Getting past the pleadings stage with his $526,000 claim intact is the Trustee's goal here.  That he would not ultimately prevail were the case to go to trial is not his concern.   He presumes that the litigation costs he can compel SPS to incur through written discovery demands – though needless, since SPS already provided him all the pertinent documents informally – and needless depositions – will increase the pressure on SPS to meet unjustified settlement demands.

*See Froid v. Berner*, 649 F. Supp. 1418, 1426 (D.N.J. 1986) ("Discovery is an awesome weapon; it should [not] be used … to coerce settlements.").

71.    The Trustee's very insistence on moving to taking discovery *from SPS* itself evinces this abusive tactic.  The Trustee is alleging a contract was breached between Bayou Steel and SPS. He has had two years to investigate and gather information, including from Bayou Steel – as he is obligated to do before filing complaints, under the Federal Rules – and yet nothing in his complaints indicates that any such investigation was undertaken; nor certainly that it led to finding a "contract" that would support his farfetched Count 4 claim.

72.    The Supreme Court's rulings in *Iqbal* and *Twombly* were aimed at addressing the problem presented by complaints such as this one, by heightening the standard that a complaint must satisfy to survive a motion under Rule 12(b)(6).    The claims must be "plausible," not just "possible," and they must be supported by evidence-based fact allegations, and not merely conclusory assertions.

73.    The Court should "weed out" the meritless Count 4, as well as Counts 2 and 3, "prior to the commencement of discovery" *See Hydrogen, L.L.C.*, 431 B.R. at 346.  Applying appropriate scrutiny to the proposed 2nd Am. Complaint, the Court should deny the Trustee leave to file.

74.    In the event that the Trustee should seek to reply to this Response by proposing a further modification of the proposed complaint, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988); In re Essar Steel Minnesota LLC, 602 B.R. 600, 607 (Bankr. D. Del. 2019).  Similarly, the Trustee may not introduce new arguments in the reply not raised in the Motion.

75.    Given the patently defective nature of Count 4, in particular, SPS further urges the

Court to direct that it should be omitted from any further amended complaint.

76.    For any future, further amended complaint, SPS urges the Court to direct Plaintiff to attach the operative documents upon which the complaint is based, pursuant to Fed. R. Civ. P. 12(e).    *See, e.g. AK FortySeven Records Ltd. Co. v. Bahamas Ministry of Tourism*, 2018 WL 1877020, at *4 & n. 5  (S.D. Tex. Apr. 19, 2018) ("to the extent the alleged contract between Sherman and Defendant is a written agreement, the amended complaint must attach a copy"); *Red Shield Ins. Co. v. Barnhill Marina & Boatyard, Inc.*, 2008 WL 3271052, at *3 (N.D. Cal. Aug. 7, 2008) ("As this action involves breach of contract, defendants need to know what the contract is at issue."); *Debord v. Nat'l Lloyds Ins. Co.*, 2015 WL 1526088, at *1–2 (E.D. Mo. Apr. 2, 2015) ("Vague references to unspecified 'agreements' are insufficient to state a claim for breach of contract."); *Pierce v. Montgomery Cty. Opportunity Bd., Inc.*, 884 F. Supp. 965, 970 (E.D. Pa. 1995) ("We find that Federal Rule of Civil Procedure 8(a) permits a plaintiff to assert the existence of an express, written contract either by setting it forth verbatim in the complaint, or the plaintiff may "attach a copy as an exhibit").

### CONCLUSION

For the foregoing reasons, SPS respectfully urges the Court:

- To deny Plaintiff's Motion for Leave to File Second Amended Complaint, on the ground that the proposed amended Counts 2, 3, and 4 would be futile;

- To direct that any further amended complaint be limited to the matter asserted in Count 1 of the proposed complaint; and

- To grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: April 1, 2022

/s/ Douglas N. Candeub
Eric J. Monzo (DE Bar No. 5214)
Douglas N. Candeub (DE Bar No. 4211)
**MORRIS JAMES LLP**
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Tel: (302) 888-5848
Fax: (302) 504-3953
Email: emonzo@morrisjames.com
        dcandeub@morrisjames.com

*Counsel for Defendant Steel and Pipe Supply
Company, Inc.*

13519569/1